

FILED
DEC 1 4 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CONOPCO, INC.**
**d/b/a FOOD SERVICE DIRECT**

    **Plaintiff,**

v.                                              CIVIL ACTION No. 2:21-cv-347

**REBEL SMUGGLING, LLC,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss the Complaint ("Motion to Dismiss"), pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(2), or, in the alternative, pursuant to FRCP 12(b)(6), filed by Defendant Rebel Smuggling, LLC ("Defendant" or "Rebel"). Def.'s Mot. Dismiss, ECF No. 13. The Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Def.'s Mem. Supp. Dismiss, ECF No. 14 ("Def.'s Mem. Supp."); Pls.' Mem. Opp. to Def.'s Mot. Dismiss, ECF No. 15 ("Pls.' Mem. Opp."); and Def.'s Reply to Pls.' Mem. Opp. to Def.'s Mot. Dismiss, ECF No. 16 ("Def.'s Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

### I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff Conopco, Inc. d/b/a Food Service Direct ("Plaintiff" or "FSD") filed a Complaint on June 23, 2021. Compl., ECF No. 1. Relevant to Defendant's Motion to Dismiss and stated in

the light most favorable to Plaintiff, the following facts are drawn from the Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Plaintiff is a corporation organized and existing under the laws of Delaware, with its principal place of business in New Jersey. Compl. ¶ 4. Plaintiff also has an office in Hampton, Virginia. *Id.* Defendant is a corporation organized and existing under the laws of California, with its principal place of business in California, and maintains an office in California. *Id.* at ¶ 5.

Plaintiff operates a digital marketplace located at https://www.foodservicedirect.com/ ("Plaintiff's Website"), in which they offer and ship bulk food products, specializing in "hard-to-find inventory." *Id.* at ¶¶ 13-14. Plaintiff has developed and owns a copyrighted categorization system, which includes multilevel product categorization and carefully tailored product descriptions for Plaintiff's Website. *Id.* at ¶ 15. This categorization system makes it easy for customers to navigate the website to select and purchase items, which, according to Plaintiff, is a primary driver of its popularity in relation to its competitors. *Id.* at ¶ 14. Plaintiff owns three copyright registrations to protect the copyrighted content (together, "Copyrighted Work"). *Id.* at ¶¶ 17-20. Consistent with 17 U.S.C. § 102, the Copyrighted Work relates to original works of authorship fixed in a tangible medium of expression. *Id.* at ¶ 21. The artful way products are categorized and described constitutes original and protected elements of the Copyrighted Work. *Id.* On its Website, Plaintiff has published and displayed the Copyrighted Work and copyright notices indicating its ownership of such. *Id.* at ¶¶ 22-23.

Defendant similarly sells food products in bulk through its digital marketplace located at https://rebelsmuggling.com/ ("Defendant's Website"), through which they provide "foodservice plunder for our rebel friends." *Id.* at ¶ 25. Plaintiff alleges that Defendant deliberately copied the product categorization system and descriptions found on Plaintiff's Website. *Id.* at ¶ 26. Plaintiff

alleges, specifically, that Defendant engaged in unauthorized copying and unauthorized public display of the Copyrighted Work beginning in or around April 2020 to the present. *Id.* at ¶ 27. In so doing, Plaintiff alleges that Defendant has unlawfully displayed the Copyrighted Work, or a derivative thereof ("Infringing Work"), to their benefit and to the detriment of Plaintiff. *Id.* Further, Plaintiff alleges that Defendant violated the Intellectual Property Rights section of Plaintiff's Terms of Use. *Id.* at ¶¶ 36-40. Accordingly, Plaintiff asserts three Counts against Defendant:

    Count 1.    Federal Copyright Infringement under 17 U.S.C. § 501 (*Id.* at ¶¶ 41-46)

    Count 2.    Common Law Copyright Infringement (*Id.* at ¶¶ 47-53)

    Count 3.    Breach of Contract (*Id.* at ¶¶ 54-60).

The Court finds that it does not have personal jurisdiction over Defendant. Accordingly, it need not analyze the Rule 12(b)(6) basis for the Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action against a party where the court lacks personal jurisdiction. Personal jurisdiction must be authorized both by the forum state's long-arm statute and by the Due Process Clause of the Fourteenth Amendment, which requires that a defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). To determine whether "minimum contacts" exist, a plaintiff must show that the defendant "purposefully directed his activities at the residents of the forum" and that plaintiff's cause of action "arises out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). In other words,

this inquiry protects a defendant from being forced to defend himself in a forum where he did not anticipate facing suit. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, the analysis must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 671 U.S. 277, 283 (2014); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))). As Virginia's long-arm statute extends to the full scope of the Due Process Clause, the inquiries in this case are one and the same.[1] *CFA Inst.*, 551 F.3d at 292; *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). As the Plaintiff, FSD bears the burden of proving grounds for personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits to assure itself. *Grayson*, 816 F.3d at 269. Yet, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion,

---

[1] The Court notes that Defendant contests personal jurisdiction under specific provisions of Virginia's long-arm statute. Specifically, Defendant contests jurisdiction under Virginia Code Ann. § 8.01-328.1(A)(3) or (4). *See* Def.'s Mot. Dismiss; Def.'s Mem. Supp 1. However, since Plaintiff does not rely on either of these specific provisions as the basis for personal jurisdiction, the inquiry is not limited by them. Since Virginia's long-arm statute extends personal jurisdiction over non-resident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause, the standard is not whether § 8.01-328.1(A)(3) or (4) is satisfied, but rather whether "such jurisdiction comports with the strictures of constitutional due process." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1057 (2021).

4

supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing." *Id.* at 268. Further, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

A defendant may be subject to general or specific jurisdiction, but only the latter is relevant here. *See* Def.'s Mem. Supp. 7; Pl.'s Mem. Opp. 2 ("Rebel is correct that FSD does not allege that Rebel is subject to general personal jurisdiction in Virginia." (emphasis in original)). With regard to the due process requirements for asserting specific personal jurisdiction, the Fourth Circuit requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations and citations omitted).

### III. DISCUSSION

#### A. Purposeful Availment

The first prong concerns "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State." *ALS Scan*, 293 F.3d at 712. To determine whether Defendant purposely availed itself of the privilege of conducting activities in the Commonwealth of Virginia, the Fourth Circuit has identified numerous nonexclusive factors to consider, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the

> defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278). In the context of online activities and websites, the Fourth Circuit has also adopted the "sliding scale" model developed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *ALS Scan*, 293 F.3d at 713. Specifically, in this context, a court has personal jurisdiction over a non-resident defendant when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714. Importantly, under this standard, "a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received" because "[s]uch passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State" that would create a potential cause of action. *Id.* The touchstone of purposeful availment remains "that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)).

Here, like the court in *ALS Scan*, the Court concludes that Defendant's activity was, "at most, passive," and therefore does not meet the purposeful availment standard. 293 F.3d at 714. Looking first to the *Consulting Eng'rs Corp.* factors, Defendant does not have any offices, property, operations, or agents in Virginia. Compl. ¶ 5; *see also* Def.'s Mem. Supp. Ex. 1, at ¶¶ 3-

6

6, 15. There is also no evidence presented indicating that Defendant has ever solicited, initiated, or deliberately engaged in any business in Virginia. Def.'s Mem. Supp. Ex. 1 at ¶¶ 7-10. Indeed, Defendant contends that its overall sales to Virginia represent only 0.389% of its total sales and it has never entered any contracts with individuals in the Commonwealth. *Id.* at ¶¶ 9-10. Plaintiff contends that the lack of contacts here is irrelevant because of the Internet-specific factors. *See* Pl.'s Mem. Opp. 5.

Looking to the *ALS Scan* Internet-specific factors, however, there is no evidence that Defendant "directs electronic activity into" Virginia "with the manifested intent of engaging in business or other interactions" such that would create "a potential cause of action." 293 F.3d at 714. In this regard, Plaintiff relies entirely on the Fourth Circuit's recent decision in *UMG Recordings*. 963 F.3d 344. However, while the facts here bear some similarities, they bear more important differences. First, Plaintiff relies on the assertion that "Rebel collects personal information from Virginia residents" when they visit Defendant's website, including their region, zip code, and area code. Pl.'s Mem. Opp. 5. Defendant clarifies in its Reply that this information is not collected from all website visitors, but rather only when a user calls Defendant with a question. *See* Def.'s Reply 3. Further, Defendant emphasizes that its Website traffic from Virginia is significantly less than the Website in *UMG Recordings*. *Id.* at 2. Defendant notes that from April 1, 2020 to June 30, 2021, its Website logged only 60,481 visitors from Virginia – as opposed to the 1.5 million in *UMG Recordings* – representing only 3.11% of its overall traffic during that period. *Id.* at 2. Moreover, during that period and of those visitors, only 493 Virginia visitors made a purchase. *Id.* at 3.

Contrary to Plaintiff's argument, these facts are meaningfully different from those in *UMG Recordings*. There, the defendant's website explained that "visitors' IP addresses, countries of

origin, and other non-personal information may be collected 'to provide targeted advertising.'" *Id.* at 348. In fact, one of the primary factors indicating that the defendant purposefully availed himself was that he targeted his advertising to Virginia residents. *Id.* at 354. Therefore, the defendant's targeted advertising into the Commonwealth, not the data collection from website visitors, constituted purposeful availment in that case. *Id.* Here, even if Defendant were collecting personal information from website visitors, Plaintiff offers no information regarding Defendant's advertising practices, let alone whether it targets such advertisements to Virginia residents.

Second, Plaintiff relies on the fact that one of Defendant's two authoritative servers is provided by Verisign, Inc., which is headquartered in Herndon, Virginia. Pl.'s Mem. Opp. 5. The defendant's website in *UMG Recordings*, which was based in Russia, also had a domain administered by VeriSign, Inc. 963 F.3d at 349. However, the court merely mentioned that as one of a plethora of connections to Virginia and ultimately did not consider it as a factor in its analysis. *Id.* Here, the Court finds this fact to be a tenuous and unconvincing factor for personal jurisdiction. Ultimately, unlike in *UMG Recordings*, this is "a situation where a defendant merely made a website that happens to be accessible in Virginia." 963 F.3d at 355. Accordingly, the Court cannot conclude that Defendant "purposefully availed itself of the privilege of conducting activities in the [Commonwealth]." *ALS Scan*, 293 F.3d at 712.

### B. Claim Arising Out of Activities Directed at the Forum

While the first prong is sufficient to close the personal jurisdiction inquiry, the second is also compelling. The second prong concerns "whether the plaintiffs' claims arise out of those activities directed at the State." *ALS Scan*, 293 F.3d at 712. "The analysis here is generally not complicated." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292,

303 (4th Cir. 2012). Rather, "[w]here activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied." *Id.* (quoting *CFA Inst.*, 551 F.3d at 295).

Even if the Court were to assume that Defendant directed its activities to the Commonwealth, the "genesis of the dispute" in this case is located elsewhere. Notably, although the core of Plaintiff's Complaint is its copyright allegation, Plaintiff fails to articulate whether and to what extent Defendant's unlawful conduct took place in or involved Virginia. Indeed, the three specific copyright registrations upon which Plaintiff relies for its claim to legal redress all list Plaintiff, the "Copyright Claimant," as located in New Jersey. Compl. Exs. A, B, C. Further, Plaintiff makes no assertion that any of the Copyrighted Work was created, developed, or worked on at all in its Virginia office. In other words, Plaintiff fails to demonstrate "an affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb*, 137 S. Ct. at 1781. Thus, regardless of the nature of Defendant's activity in Virginia, Plaintiff fails to allege that its claims arise from such.

### C. Constitutional Reasonableness

The third prong concerns "whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan*, 293 F.3d at 712. Considering the inability of Defendant to satisfy the first two prongs, the Court concludes that is would be constitutionally unreasonable to exercise personal jurisdiction in this case. *See Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001).

Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. Accordingly, this matter is hereby **DISMISSED WITH PREJUDICE**. The Court also

9

**DISMISSES AS MOOT** Plaintiff's Motion for Preliminary Injunction. Pl.'s Mot. Prelim. Inj., ECF No. 6.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the Parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
December 14, 2021

UNITED STATES DISTRICT JUDGE